UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ERNESTO CINTRON,

    Plaintiff,

v.                                       Case No: 6:16-cv-1014-Orl-40TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Ernesto Cintron appeals to this Court from Defendant, the Commissioner of Social Security's final decision to deny his applications for disability insurance benefits and supplemental security income. I have reviewed the record, including the administrative law judge's ("ALJ") decision, the exhibits, and the joint memorandum submitted by the parties. For the following reasons, I respectfully recommend that the Commissioner's final decision be **affirmed**.

### I. Background[1]

Plaintiff applied for benefits on October 30, 2012, alleging a disability onset date of September 1, 2012 (Tr. 202-210). His claims were denied at the initial level on December 14, 2012 and on reconsideration on February 14, 2013 (Tr. 133-156). At his request, an ALJ conducted an administrative hearing on July 22, 2014 and issued an unfavorable decision on October 16, 2014 (Tr. 7-66). On April 23, 2016, the Appeals Council denied Plaintiff's petition for review of the ALJ's decision (Tr. 1-4). The ALJ's decision is the

---

[1] The information in this section comes from the parties' joint memorandum filed on January 25, 2017 (Doc. 18).

Commissioner's final decision and this appeal timely followed (Doc. 1). Plaintiff has exhausted his administrative remedies and his case is ripe for review.

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the Commissioner's five-step sequential evaluation process set out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The evaluation process requires the ALJ to determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner. Id., at 1241 n.10; Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since his September 1, 2012 alleged onset date (Tr. 12). At step two, the ALJ found that Plaintiff had the following severe impairments: back disorder, bilateral knee arthropathy, osteoarthritis of the right knee, left shoulder joint pain, diabetes mellitus type II, hypertension, hyperlipidemia, depressive disorder, and anxiety (Id.). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (Tr. 21-23). Before proceeding to step four, the ALJ decided that Plaintiff had the residual functional capacity ("RFC") to,

> [P]erform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; can stand/walk and sit for approximately 6 hours each in an 8-hour workday with normal breaks; and cannot stand, walk, or sit for more than 30 minutes at a time, needing to change positions for 1-2 minutes, without leaving the workplace. Reaching overhead with the left upper extremity would be limited to occasionally. He could climb stairs, balance, stoop, kneel, crouch, and crawl occasionally, but should never climb ladders or scaffolds. He must avoid exposure to vibration, m1protected heights, and hazardous machinery and must avoid moderate exposure to extreme heat, cold, wetness, and humidity. His work would be limited to simple, routine, and repetitive tasks, limited to low stress work, meaning that the claimant could not perform jobs with strict timeframes.

(Tr. 14-20). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work (Tr. 20). But, the ALJ ultimately concluded at step five that there were other jobs in the national economy – including garment sorter, cafeteria worker, and laundry worker – that Plaintiff could perform and therefore, he was not disabled (Tr. 21-22).

### III. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder

of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

### A. The ALJ Properly Considered Dr. Tiffany Schiffner's Medical Opinion

The ALJ gave substantial weight to the opinion of psychologist Dr. Tiffany Schiffner, who performed a consultative examination of Plaintiff. Still, Plaintiff argues that the ALJ committed reversible error when he determined that Dr. Schiffner's conclusion regarding Plaintiff's severely limited social functioning was unsupported by the record and therefore entitled to no weight (Doc. 18 at 14). Plaintiff argues that the ALJ's conclusion failed to incorporate Dr. Schiffner's treatment notes, in which she recorded that Plaintiff exhibited anhedonia, crying spells, isolating behavior, did not want to leave his home or visit with any friends, and "shuts down" on his wife (Doc. 18 at 14-15) (Tr. 49, 452-454).

The ALJ's written opinion clearly shows that he considered Dr. Schiffner's treatment report in its entirety, including all of the factors Plaintiff argues that he *should have* considered (Tr. 16). The ALJ determined that there was no evidence of a severe social functional limitation after conducting a detailed analysis of the evidence:

> On December 12, 2012, Dr. Tiffany Schiffner, a consulting psychologist, saw the claimant for complaints of hurting all over the body, depressed mood, anhedonia, crying spells,

> increased appetite, isolating behaviors, feelings of
> worthlessness, concentration difficulty, and indecisiveness.
> He was unable to focus or concentrate. He also reported
> anxiety and restless and nervousness every day. He did not
> leave the apartment. He experienced nightmares 2-4 times
> per week, feeling someone grabbing his neck while asleep.
> He woke up sweating and crying. He bit his fingernails all day.
> He constantly thought about his family who were deceased.
> He last used cocaine and marijuana at 21 years of age. He
> isolated himself in his room. He had no friends outside of his
> immediate family. He enjoyed nothing. The diagnoses were
> major depressive disorder, single episode, moderate and
> anxiety disorder (based on wife's and self-reports), and clinical
> observation (Exhibit 7F). I have considered and accords
> substantial weight to the findings of Dr. Schiffner, but I do not
> give weight to suggestion that the claimant has severe
> limitations with social functioning. There is nothing in the
> record to support her suggestion. There is no evidence of
> psychiatric treatment in the record.

(Tr. 16). The ALJ also considered Dr. Schiffner's observation that Plaintiff was able to take care of his personal needs and hygiene (although back pain sometime made it difficult) and that Dr. Schiffner failed to make any significant findings (Tr. 19). This analysis satisfies the ALJ's duty to carefully examine the evidence and reach conclusions based on whether "severity" is adequately supported by the record.

The ALJ is well within his discretion to afford less than optimal weight (or no weight at all) to a medical opinion that is not supported by objective medical evidence. Here, the ALJ provided a reasoned explanation of why he did not fully accept Dr. Schiffner's opinion and I find no error. Therefore, I respectfully recommend that the district judge reject Plaintiff's argument in this regard.

    B.  <u>The ALJ's Failure To Weigh Dr. Zolila Jorro's Opinion Was Harmless Error</u>

Plaintiff argues that the ALJ's final decision should be reversed because he failed to assign any weight to the opinion of Plaintiff's treating physician, Dr. Jorro. (Doc. 18 at 16-17). The Commissioner concedes that the ALJ erred by not weighing Dr. Jorro's

- 5 -

opinion, but argues that the error is harmless because the doctor's opinions do not contradict the RFC the ALJ assigned to Plaintiff (Doc. 18 at 25).

Weighing the findings and opinions of treating, examining, and non-examining physicians is an integral part of steps four and five of the sequential evaluation process. The Eleventh Circuit clarified the standard the Commissioner is required to utilize when considering medical opinion evidence in Winschel. There, the court held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. 631 F.3d at 1178-79; see also Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory[2] or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir.1991).

When a treating physician's opinion does not warrant controlling weight, the ALJ must still consider the following factors in deciding how much weight to give the medical opinion: "(1) the length of the treatment relationship and the frequency of examination; (2)

---

[2] When a treating physician makes conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion." Logreco v. Astrue, No. 5:07-cv-80-Oc-10GRJ, 2008 WL 783593, at *10 (M.D. Fla. Mar. 20, 2008). Regardless of whether controlling weight is appropriate, "the Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." Hill v. Barnhart, 440 F. Supp. 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted); see also Sullivan v. Comm'r. Soc. Sec., No. 6:12-cv-996-Orl-22, 2013 WL 4774526, at *7 (M.D. Fla. Sept. 4, 2013); Bumgardner v. Comm'r Soc. Sec., No. 6:12-cv-18-Orl-31, 2013 WL 610343, at *10 (M.D. Fla. Jan. 30, 2013); Bliven v. Comm'r Soc. Sec., No. 6:13-cv-1150-Orl-18, 2014 WL 4674201, at *3 (M.D. Fla. Sept. 18, 2014); Graves v. Comm'r Soc. Sec., No. 6:13-cv-522-Orl-22, 2014 WL 2968252, at *3 (M.D. Fla. June 30, 2014).

Dr. Jorro examined Plaintiff on May 19, 2011; May 24, 2011; June 29, 2011; July 13, 2011; September 13, 2011; November 11, 2011; December 15, 2011; March 15, 2012; April 19, 2012; May 10, 2012; December 11, 2012; December 27, 2012; January 31, 2013; and May 3, 2013 (Tr. 454-511). Plaintiff's May 19, May 24, June 29, July 13 and September 13, 2011 examinations were all largely unremarkable. Dr. Jorro observed that Plaintiff had a normal range of motion in his extremities and diagnosed him with hyperlipidemia, hypertension, and prediabetes (Tr. 502-509). However, on November 11 and December 15, 2011, Plaintiff demonstrated a decreased range of motion in his right shoulder (Tr. 497-500).

In March, April, and May, 2012, Dr. Jorro again recorded findings that were largely unremarkable. He noted that there was no evidence of pain to any part of Plaintiff's body and no evidence of depression of any kind (Tr. 489-490, 494-495). Plaintiff's known

conditions (Type 2 diabetes, mixed hyperlipidemia, and hypertension) were all controlled by medication (Tr. 490, 492-493, 495-496).

In December, 2012, Dr. Jorro reported that Plaintiff was experiencing chronic back pain and pain in both of his knees (Tr. 483, 488). On December 27, 2012, Dr. Jorro diagnosed Plaintiff with "mild depression," prescribed an antidepressant (Pristiq), and referred him to a psychologist (Tr. 485). Plaintiff's visits on January 31 and May 3, 2013 were largely unremarkable and his hyperlipidemia, hypertension, depression, and prediabetes, were all adequately controlled by medication (Tr. 461-463, 480, 482).

In his written decision, the ALJ considered and discussed Dr. Jorro's December 11, 2012 treatment note and one other "follow-up visit," presumably the December 27, 2012 visit:

> On December 11, 2012, Dr. Zoila Jorro, a treating physician, saw the claimant for complaints of a lump under the arm. The claimant also presented chronic back pain and knee pain. The assessments were uncontrolled type 2 diabetes mellitus, mixed hyperlipidemia, benign hypertension, knee pain, and chronic low back pain. On a follow-up visit, the claimant complained of feeling depressed, lack of energy, and not wanting to get out of the house. He also was assessed with mild depression[.]

(Tr. 15-16). The ALJ considered the two December, 2012 evaluations, which were the only ones in which Dr. Jorro made diagnoses or treatment observations beyond his typical unremarkable observations (Tr. 14-15).

Although Plaintiff speculates that the ailments noted in Dr. Jorro's treatment notes "would impact" his ability to sit, stand, and use his right arm, nothing in Dr. Jorro's treatment records evidences work related limitations that exceed the RFC which the ALJ assigned to Plaintiff. Because Dr. Jorro did not opine that Plaintiff's ability to work was in any way restricted, I find that the ALJ's failure to weigh the doctor's opinion was harmless

error. See Caldwell v. Barnhart, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) ("An ALJ's failure to state with particularity the weight given different medical opinions is reversible error. When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citation omitted); Wright v. Barnhart, 153 F. Appx. 678, 684 (11th Cir. 2005) ("Although the ALJ did not explicitly state what weight he afforded the opinions of Hahn, Fritz, Shivashankara, and Gornisiewicz, none of their opinions directly contradicted the ALJ's findings, and therefore, any error regarding their opinions is harmless."). Plaintiff has not satisfied his burden of showing that he was prejudiced by the ALJ's failure to assign weight to Dr. Jorro's opinion and I respectfully recommend that the district judge overrule this objection to the Commissioner's final decision.

### C.  The ALJ Properly Relied on the Vocational Expert Testimony

Plaintiff argues that the ALJ failed to pose a hypothetical question (and ultimately relied on a flawed hypothetical) that did not fully account for all of his impairments (Doc. 18 at 26-29). Plaintiff's argument is grounded in his objection to the ALJ's handling of the medical opinion testimony (Id. at 26-28) ("In the instant case, the ALJ as stated in Issue Number 1 of this brief above, assigned a RFC to the claimant that was not supported by substantial evidence ... [s]ince the ALJ did not weigh and adequately consider all of the evidence in the record, the hypothetical relied on by the ALJ did not include all the limitations of the claimant."). Because I have rejected Plaintiff's contentions as they relate to the ALJ's consideration of Dr. Schiffner and Dr. Jorro's opinions (sections A and B, supra), I necessarily reject the same arguments as a basis for challenging the vocational expert's testimony.

- 9 -

Plaintiff claims that the ALJ also erred by failing to present a hypothetical to the vocational expert that accounted for his moderate difficulties with pace. (Id. at 28). Plaintiff argues that despite finding that he suffered from this impairment, the ALJ posed a hypothetical that only limited the person to low stress work and simple, routine, and repetitive tasks (Id.) (citing Tr. 61). Plaintiff relies on a Sixth Circuit case (Ealy v. Comm'r Soc. Sec., 594 F.3d 504, 516-17 (6th Cir. 2010)) in support of its argument that these limitations do not address his difficulty with pace. Plaintiff's reliance on a Sixth Circuit case is misplaced because decisions of another circuit are not binding on this Court.

"Mental limitations such as concentration, persistence, and pace, are generally considered as part of the psychiatric review technique [PRT] described in 20 C.F.R. §§ 404.1520a and 416.920a, in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." Kinnard v. Astrue, No. 8:09-cv-628-T-24AEP, 2010 WL 3584583, at *5 (M.D. Fla. Aug. 26, 2010) (citing SSR 96-8p, 1996 SSR LEXIS 5). The PRT and the RFC are distinct. Winschel, 631 F.3d at 1180.

But, when the ALJ makes a finding that a claimant is limited in maintaining concentration, persistence or pace as part of the PRT, the ALJ must account for those limitations in the hypothetical question to the vocational expert unless "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," in which case, "limiting the hypothetical [either explicitly or implicitly] to include only unskilled work sufficiently accounts for such limitations." Id.; see also Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872 (11th Cir. 2011) (an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to

- 10 -

perform the tasks despite concentration deficiencies.).

Substantial record evidence supports the ALJ's conclusion that Plaintiff retained the functional capacity to perform simple, routine, and repetitive tasks despite his moderate limitations in pace. The ALJ based his conclusion on: the consultative examiner's opinion which lacked significant findings; Dr. Schiffner reported that Plaintiff's thought processes, attention, and concentration were normal and that he completed all mental control tasks; Dr. Perdomo reported that Plaintiff had a normal mental-status examination; there was no other evidence of mental health impairment other than the psychological consultative examination; and the evidence demonstrated that Plaintiff was capable of performing low stress work (Tr. 17-20). In light of the medical evidence and the ALJ's findings, I conclude that the hypothetical to the VE was based on substantial evidence. I also find that the ALJ's treatment of this issue comports with the decisions in Winschel and Jarrett.

D. The ALJ's Credibility Determination Was Supported By Substantial Evidence

Plaintiff argues that the ALJ's findings concerning his credibility finding are undermined by record evidence that "clearly reveals that [he] suffered from documented impairments causing significant limitations" (Doc. 18 at 31). Plaintiff further argues that the ALJ failed to make an explicit credibility finding (Id.).

"[C]redibility determinations are the province of the ALJ," and the Court should "not disturb a clearly articulated credibility finding supported by substantial evidence." Mitchell v. Comm'r of Soc. Sec., 771 F.3d 780, 782 (11th Cir. 2014). The ALJ made the following credibility assessment in his decison:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms;

> however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 26).

Plaintiff objects to this "boilerplate" language because it "does not offer enough reasoning to support the ALJ's determination that the claimant is not credible" (Doc. 18 at 32). She argues that the phrasing used by the ALJ is part of a "template" and is "hackneyed language seen univer[s]ally in ALJ decisions [that] adds nothing." (Id.) (citing Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012)). Relying on Bjornson v. Astrue, 671 F.3d 640, 645-46 (7th Cir. 2012), Plaintiff argues that the ALJ's use of boilerplate language precludes the district court from making an adequate review of the ALJ's decision. In Bjornson the Court considered the following language embedded in an ALJ's decision:

> After careful consideration of the evidence, the undersigned [administrative law judge] finds that the claimant's medically determinable impairments would reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

671 F.3d at 644; see also Shauger, 675 F.3d at 696. Judge Posner, writing on behalf of the Court of Appeals for the Seventh Circuit criticized the template:

> Such boilerplate language fails to inform us in a meaningful reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible. More troubling, it appears that the Commissioner has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case.

671 F.3d at 645.

Opinions from the Seventh Circuit are not binding on this Court, and while the Eleventh Circuit Court of Appeals has not yet rendered a decision on the issue, the Bjornson opinion has been rejected by district courts in the Eleventh Circuit: Philpot v. Comm'r Soc. Sec., No. 6:16-cv-417-Or-40TBS, 2017 WL 912122, at * 3-4 (M.D. Fla. Feb. 14, 2017; Lloyd v. Comm'r Soc. Sec., No. 6:14-cv-1038-Orl-TBS, 2015 WL 12856761, at * 6 (M.D. Fla. Aug. 5, 2015); see also Rosado v. Comm'r Soc. Sec., No. 5:13-cv-519-Oc-18PRL, 2015 WL 892366, at *4 (M.D. Fla. Mar. 2, 2015); Hadley v. Comm'r Soc. Sec., Civil No. 5:13-cv-593-Oc-18PRL, No. 2015 WL 327512, at *7 (M.D. Fla. Jan. 23, 2015); Decook v. Colvin, No. 312-cv-1122-J-JRK, 2014 WL 1249325, at *11 n.10 (M.D. Fla. Mar. 26, 2014); Birchfield v. Colvin, No. 8:13-cv-258, 2014 WL 794320, at *9 n.10 (M.D. Fla. Feb. 26, 2014); and Strickland v. Colvin, No. CV 112-171, 2014 WL 61348, at *4 (S.D. Ga. Jan. 7, 2014). I recommend this Court follow these decisions which explain that the ALJ's use of boilerplate credibility language is not reversible error when the ALJ otherwise sufficiently explains his credibility determination. Philpot, 2017 WL 912122, at * 4; Lloyd, 2015 WL 12856761, at * 6; Rosado, 2015 WL 892366, at *4; Strickland, 2014 WL 61348, at *4; Hadley, No. 2015 WL 327512, at *7; Fitzgerald v. Colvin, Case No. 2:13-cv-24-FtM-29CM, 2014 U.S. Dist. LEXIS 42102, at *25-26 (M.D. Fla. Mar. 6, 2014); Karboski v. Colvin, No. 8:12-cv-2033-T-33EAK, 2013 WL 3766598, at *9 n.16 (M.D. Fla. July 16, 2013).

Here, the ALJ provided the following discussion of Plaintiff's alleged impairments and the evidence of record to support the credibility determination:

> The claimant displayed no evidence of pain or discomfort while testifying at the hearing. While the hearing was short-lived and cannot be considered a conclusive indicator of the

claimant's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity. He said that he has the habit of eating quite often as part of his anxiety. I inquired as to how often and what he was eating. He said that he eats cake, cereal, and bread, which should not be part of a diabetic diet. He testified that his diabetes is controlled.

Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor.

While it is reasonable to conclude that the claimant should have some pain and/or limitations as a result of the effects of back disorder, bilateral knee arthropathy, osteoarthritis of the right knee, and left shoulder joint pain, the evidence as a whole does not substantiate any cause for such debilitating pain, as described by the claimant, which would preclude all work activity. The record fails to show that the claimant has required significant forms of treatment such as additional surgery, periods of hospitalization, emergency room treatment, nor does the record show such a marked diminished range of motion or muscle atrophy as would accompany the alleged disability.

I considered the claimant's subjective complaints in light of Sections 404.1529 and/or 416.929 of the Regulations. As required by those sections, both medical evidence and the claimant's testimony, activities of daily living, and statements and reports were considered. However, after considering all the factors set out in those sections of the regulations, I find that the claimant's subjective complaints are not fully credible considering the claimant's own description of activities and lifestyle, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the claimant's demeanor at hearing, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and the claimant's assertions concerning his ability to work. Therefore, I do not necessarily accept all allegations of impairments as true.

(Tr. 18-19).

These findings are sufficient to demonstrate that the ALJ considered the evidence as a whole in assessing Plaintiff's credibility. Therefore, I respectfully recommend that the district judge overrule Plaintiff's objection.

## V. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Commissioner's final decision in this case be **AFFIRMED,** and that the Clerk be directed to enter judgment accordingly and **CLOSE** the file.

## VI. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida on July 27, 2017.

*[Signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding District Judge
    Counsel of Record